UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE BENEFIT OF THE REGISTERED HOLDERS OF BENCHMARK 2018-B5 MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2018-B5, acting by and through Midland Loan Services, a Division of PNC Bank, National Association, as Special Servicer under the Pooling and Servicing Agreement dated as of August 1, 2018, <br><br> Plaintiff, <br><br> v. <br><br> 115 OWNER LLC; 191 OWNER LLC; 621 OWNER LLC; 74-01 OWNER LLC; 245-02 OWNER LLC; 90-55 OWNER LLC; 90-59 OWNER LLC; 1160 OWNER LLC; 49 OWNER LLC; THE ROBIN ESHAGHPOUR REVOCABLE TRUST; ROBIN ESHAGHPOUR; RIPCO REAL ESTATE, LLC; and NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, <br><br> Defendants. | Civil Action File No. <br><br> _____ |

## COMPLAINT

Plaintiff Wilmington Trust, National Association ("Trustee"), as Trustee for the Benefit of the Registered Holders of Benchmark 2018-B5 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2018-B5 (the "Trust") (Trustee as trustee of the Trust shall be referred to hereinafter as "Plaintiff") acting by and through Midland Loan Services, a Division of PNC Bank, National Association ("Special Servicer") as Special Servicer under the Pooling and Servicing Agreement dated as of August 1, 2018 (the "PSA"), states its complaint as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Trustee, acting solely in its capacity as trustee of the Trust, is a national banking association with its designated main office located in Wilmington, Delaware.

2.      Trustee is the duly appointed and presently serving Trustee of the Trust created under the PSA.

3.      Trustee, not individually, but solely in its capacity as Trustee for the Trust under the PSA, acting by and through the Special Servicer, brings this action with express reference to the Loan (defined below) and the matters related thereto as hereinafter set forth. Based upon Delaware being the state of citizenship of Trustee, Plaintiff is therefore a citizen of Delaware.

4.      Defendant 115 Owner LLC ("115 Montauk Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021.  115 Montauk Borrower is the owner of certain real property and improvements located at the real property commonly known as 115 Montauk Highway, Westhampton Beach, New York 11978 and more particularly described in Exhibit 1 annexed hereto (the "115 Montauk Property").  As 115 Montauk Borrower is a limited liability company, its citizenship is determined by that of its member.  Sutphin Hampton Realty LLC ("115 Montauk Parent"), a New York limited liability company, is the sole member of 115 Montauk Borrower and The Robin Eshaghpour Revocable Trust ("Trust Guarantor"), a New York trust, is the sole member of 115 Montauk Parent.

5.      Defendant 191 Owner LLC ("191 Montauk Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021.  191 Montauk Borrower is the owner of certain real property and improvements located at the real property commonly known as 191 Montauk

2

Highway, Westhampton Beach, New York 11946 and more particularly described in Exhibit 2 annexed hereto (the "191 Montauk Property").  As 191 Montauk Borrower is a limited liability company, its citizenship is determined by that of its member.  Sutphin Tiana Realty LLC ("191 Montauk Parent"), a New York limited liability company, is the sole member of 191 Montauk Borrower and Trust Guarantor is the sole member of 191 Montauk Parent.

6.      Defendant 621 Owner LLC ("St. James Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021.  St. James Borrower is the owner of certain real property and improvements located at the real property commonly known as 607-611 & 621 Lake Avenue, St. James, New York 11780 and more particularly described in Exhibit 3 annexed hereto (the "St. James Property").  As St. James Borrower is a limited liability company, its citizenship is determined by that of its member.  Sutphin Moriches LLC ("St. James Parent"), a New York limited liability company, is the sole member of St. James Borrower and Trust Guarantor is the sole member of St. James Parent.

7.      Defendant 74-01 Owner LLC ("Middle Village Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021.  Middle Village Borrower is the owner of certain real property and improvements located at the real property commonly known as 74-01 Eliot Avenue, Middle Village, New York 11379 and more particularly described in Exhibit 4 annexed hereto (the "Middle Village Property").  As Middle Village Borrower is a limited liability company, its citizenship is determined by that of its member.  74-01 Eliot Ave LLC ("Middle Village Parent"), a New York limited liability company, is the sole member of Middle Village Borrower and Trust Guarantor is the sole member of Middle Village Parent.

8.      Defendant 245-02 Owner LLC ("Rosedale Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021.   Rosedale Borrower is the owner of certain real property and improvements located at the real property commonly known as 245-02 Merrick Boulevard, Rosedale, New York 11422 and more particularly described in Exhibit 5 annexed hereto (the "Rosedale Property").   As Rosedale Borrower is a limited liability company, its citizenship is determined by that of its member.  245-02 Merrick Blvd LLC ("Rosedale Parent"), a New York limited liability company, is the sole member of Rosedale Borrower and Trust Guarantor is the sole member of Rosedale Parent.

9.      Defendant 90-55 Owner LLC ("90-57 Sutphin Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021.  90-57 Sutphin Borrower is the owner of certain real property and improvements located at the real property commonly known as 90-57 Sutphin Boulevard, Jamaica, New York 11421 and more particularly described in Exhibit 6 annexed hereto (the "90-57 Sutphin Property").   As 90-57 Sutphin Borrower is a limited liability company, its citizenship is determined by that of its member.  90-57 Sutphin Realty LLC ("90-57 Sutphin Parent"), a New York limited liability company, is the sole member of 90-57 Sutphin Borrower and Trust Guarantor is the sole member of 90-57 Sutphin Parent.

10.      Defendant 90-59 Owner LLC ("90-59 Sutphin Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021.  90-59 Sutphin Borrower is the owner of certain real property and improvements located at the real property commonly known as 90-59 & 90-61 Sutphin Boulevard, Jamaica, New York 11435 and more particularly described in Exhibit 7 annexed hereto (the "90-59 Sutphin Property").  As 90-59 Sutphin Borrower is a limited liability

company, its citizenship is determined by that of its member. 90-59 Sutphin Realty LLC ("90-59 Sutphin Parent"), a New York limited liability company, is the sole member of 90-59 Sutphin Borrower and Trust Guarantor is the sole member of 90-59 Sutphin Parent.

11.      Defendant 1160 Owner LLC ("Westchester Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021. Westchester Borrower is the owner of certain real property and improvements located at the real property commonly known as 1160 West Boston Post Road, Mamaroneck, New York 10543 and more particularly described in Exhibit 8 annexed hereto (the "Westchester Property"). As Westchester Borrower is a limited liability company, its citizenship is determined by that of its member. Mamaroneck Holding LLC ("Westchester Parent"), a New York limited liability company, is the sole member of Westchester Borrower and Trust Guarantor is the sole member of Westchester Parent.

12.      Defendant 49 Owner LLC ("Connecticut Borrower") is a Delaware limited liability company having a principal place of business located at 530 East 76111 Street, Suite 20G, New York, New York 10021. Connecticut Borrower is the owner of certain real property and improvements located at the real property commonly known as 47-49 South Main Street, Newtown, Connecticut 06470 and more particularly described in Exhibit 9 annexed hereto (the "Connecticut Property").[1] As Connecticut Borrower is a limited liability company, its citizenship is determined by that of its member. 49 Owner Realty LLC ("Connecticut Parent"), a New York limited liability company, is the sole member of Connecticut Borrower and Trust Guarantor is the sole member of Connecticut Parent.

---

[1]  The 115 Montauk Property, the 191 Montauk Property, the St. James Property, the Middle Village Property, the Rosedale Property, the 90-57 Sutphin Property, the 90-59 Sutphin Property and the Westchester Property shall be collectively referred to hereinafter as the "New York Properties" and the New York Properties and the Connecticut Property shall be collectively referred to hereinafter as the "Properties".

13.     Defendant Robin Eshaghpour ("Eshaghpour") is an individual, a resident of New York and the trustee of Trust Guarantor.  Eshaghpour and Trust Guarantor (collectively, "Guarantors") guaranteed Borrowers' obligations pursuant to the Guaranty (as defined in paragraph 22 of this Complaint).

14.     Based on the New York citizenship of Guarantor, 115 Montauk Borrower, 191 Montauk Borrower, St. James Borrower, Middle Village Borrower, Rosedale Borrower, 90-57 Sutphin Borrower, 90-59 Sutphin Borrower, Westchester Borrower (collectively "New York Borrower") and Connecticut Borrower (collectively with New York Borrower, "Borrowers") are each citizens of New York.

15.     Defendant Ripco Real Estate LLC ("Ripco") is a New York limited liability company having a principal place of business located at 100 Jericho Quadrangle, Suite 120, Jericho, New York 11753 and is named a party defendant herein because of any title or claim it might have against the Middle Village Property as a result of any judgment it holds, including, without limitation, that judgment identified on Exhibit 10 hereto.  As Ripco is a limited liability company, its citizenship is determined by that of its sole member: Ripco Real Estate III Corp., a New York corporation.  Based on the New York citizenship of its parent, Ripco is a citizen of New York.

16.     Defendant New York City Environmental Control Board ("ECB") is a judiciary tribunal that holds hearings for violations across several New York City agencies with a principal place of business located at 100 Church Street, New York, New York 10007 and is named a party defendant herein because of any title or claim it might have against the Rosedale Property and 90-59 Sutphin Property as a result of any judgments it holds, including, without limitation, those judgments identified on Exhibit 11 hereto.  Because the ECB was created and exists under the laws of the City of New York, ECB is a citizen of New York.

6

17.     Based on the foregoing, this Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a) because it is between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

18.     Pursuant to Section 17.2 of the Loan Agreement (as defined in paragraph 19 of this Complaint), each Borrower may be served with process through its authorized agent under the Loan Agreement, Navid Aminzadeh, Esq., at the Law Offices of Navid Aminzadeh, 950 Third Avenue, Suite 901, New York, New York 10022.  Alternatively, each Borrower may be served with process through its Delaware registered agent, Vcorp Services, LLC, 1013 Centre Road, Suite 403-B, Wilmington (New Castle County), Delaware 19805.

19.     Further pursuant to Section 17.2 of the Loan Agreement, the state and federal courts located in New York County, New York are the exclusive venue of disputes under the contract:  "ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST [PLAINTIFF] OR BORROWER[S] ARISING OUT OF OR RELATING TO [THE LOAN] AGREEMENT OR THE OTHER LOAN DOCUMENTS WILL, AT [PLAINTIFF]'S OPTION, BE INSTITUTED IN . . . ANY FEDERAL OR STATE COURT DESIGNATED BY [PLAINTIFF] IN THE CITY OF NEW YORK, COUNTY OF NEW YORK."  Based on the foregoing mandatory forum selection clause, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(3).

## FACTUAL BACKGROUND

### FIRST COUNT
**(Mortgage Foreclosure)**

**A.     The Loan.**

20.     By Loan Agreement dated as of July 10, 2018 (the "Loan Agreement"), Citi Real Estate Funding, Inc. ("Original Lender"), Plaintiff's predecessor-in-interest, agreed to make a loan to Borrowers in the original principal amount of $57,375,000.00 (the "Loan").

7

21.     As evidence of the Loan, Borrowers, <u>inter alia</u>, executed and delivered to Original Lender a Consolidated, Amended and Restated Promissory Note dated July 10, 2018 in the original principal amount of $57,375,000.00 (the "Note").

22.     As collateral security for the payment of the Note, Borrowers executed, acknowledged and delivered to Original Lender the following four (4) mortgages (collectively, the "Mortgages") pursuant to which Borrowers, <u>inter alia</u>, granted to Original Lender a security interest in each of the nine (9) Properties, respectively:

(a)     by Consolidated, Amended and Restated Mortgage and Security Agreement and Spreader Agreement dated July 10, 2018, recorded with the Suffolk County Clerk's Office on July 25, 2019 in Liber 23045, at Page 337, <u>et seq</u>, and executed, acknowledged and delivered by 115 Montauk Borrower, 191 Montauk Borrower and St. James Borrower (collectively, the "Suffolk Borrowers") to Original Lender (the "Suffolk Mortgage"), the Suffolk Borrowers granted to Original Lender security title to the 115 Montauk Property, the 191 Montauk Property, and the St. James Property (collectively, the "Suffolk Properties");

(b)     by Consolidated, Amended and Restated Mortgage and Security Agreement and Spreader Agreement dated July 10, 2018, recorded with the Office of City Register for the City of New York (the "City Register's Office") on August 7, 2018 as City Register File Number ("CRFN") 2018000263446, and executed, acknowledged and delivered by Middle Village Borrower, Rosedale Borrower, 90-57 Sutphin Borrower and 90-59 Sutphin Borrower (collectively, the "Queens Borrowers") to Original Lender (the "Queens Mortgage"), the Queens Borrowers granted to Original Lender security title to the Middle Village Property, the Rosedale Property, the 90-57 Sutphin Property, and the 90-59 Sutphin Property (collectively, the "Queens Properties");

(c)     by Consolidated, Amended and Restated Mortgage and Security Agreement and Spreader Agreement dated July 10, 2018, recorded with the Westchester County Clerk's Office on August 2, 2018 as Control Number 582063366, and executed, acknowledged and delivered by Westchester Borrower to Original Lender (the "Westchester Mortgage"), Westchester Borrower granted to Original Lender security title to the Westchester Property;[2] and

---

[2]   The Suffolk Mortgage, the Queens Mortgage and the Westchester Mortgage shall be collectively referred to hereinafter as the "New York Mortgages".

(d)     by Open-End Mortgage and Security Agreement dated July 10, 2018, recorded with the Town Clerk's Office of Newtown, CT (the "Newtown Land Records Office") on July 12, 2018 in Book 1114 at Page 555, et seq, and executed, acknowledged and delivered by Connecticut Borrower to Original Lender (the "Connecticut Mortgage"), Connecticut Borrower granted to Original Lender security title to the Connecticut Property.

23.     The Mortgages also include security interests in favor of the holder of the Mortgages in, inter alia, all machinery, equipment, fixtures (including, but not limited to, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures), furniture and other property of every kind and nature whatsoever owned by Borrowers, or in which Borrowers have or shall have an interest, located upon the Properties, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Properties and all building equipment, materials and supplies of any nature whatsoever owned by Borrowers, or in which Borrowers have or shall have an interest, now or hereafter located upon the Properties, or appurtenant thereto, or usable in connection with the present or future operation and occupancy of the Properties (the "Collateral").

24.     As additional collateral security for the payment of the Loan, Borrowers executed, acknowledged and delivered to Original Lender the following four (4) assignments of leases and rents (collectively, the "ALRs") pursuant to which Borrowers, inter alia, granted to Original Lender a security interest in all Leases and Rents (as defined in the Loan Agreement) generated by each of the nine (9) Properties, respectively:

(a)     by Assignment of Leases and Rents dated July 10, 2018, recorded with the Suffolk County Clerk's Office on July 25, 2019 in Liber 13021 at Page 350, et seq, and executed, acknowledged and delivered by the Suffolk Borrowers to Original Lender (the "Suffolk ALR"), the Suffolk Borrowers granted to Original Lender a security interest in the Leases and Rents generated by the Suffolk Properties;

(b)     by Assignment of Leases and Rents dated July 10, 2018, recorded with the City Register's Office on August 7, 2018 as CRFN 2018000263447, and executed, acknowledged and delivered by the Queens Borrowers to Original Lender (the "Queens ALR"), the Queens

Borrowers granted to Original Lender a security interest in the Leases and Rents generated by the Queens Properties;

(c) by Assignment of Leases and Rents dated July 10, 2018, recorded with the Westchester County Clerk's Office on August 2, 2018 as Control Number 582063390, and executed, acknowledged and delivered by Westchester Borrower to Original Lender (the "Westchester ALR"), Westchester Borrower granted to Original Lender a security interest in the Leases and Rents generated by the Westchester Property; and

(d) by Assignment of Leases and Rents dated July 10, 2018, recorded in the Newtown Land Records Office on July 12, 2018 in Book 1114 at Page 576, et seq, and executed, acknowledged and delivered by Connecticut Borrower to Original Lender (the "Connecticut ALR"), Connecticut Borrower granted to Original Lender a security interest in the Leases and Rents generated by the Connecticut Property.

25.     Also on or about July 10, 2018, to induce Original Lender to give the Loan and to further secure its repayment, Guarantors executed a Limited Recourse Guaranty (the "Guaranty"), whereby they irrevocably and unconditionally guaranteed to Original Lender and its successors and assigns the payment and performance of the guaranteed obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise.  (The Loan Agreement, the Note, the Mortgages, the ALRs, the Guaranty and all related loan documents shall be referred to collectively herein as the "Loan Documents").[3]

**B.     Assignment of the Loan Documents.**

26.     Original Lender executed and delivered an allonge to the Note (the "Allonge") in favor of Plaintiff, pursuant to which Original Lender transferred to Plaintiff all of its rights, title and interest in and to the Note.  By virtue of the Allonge, Plaintiff became the holder of the Note with respect to the Loan herein.

27.     Original Lender also executed and delivered the following four (4) assignments of mortgage (collectively, the "Assignments of Mortgage") pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the Mortgages:

---

[3]   Capitalized terms not otherwise defined herein shall have the same meanings as ascribed in the Loan Documents.

(a)     by virtue of an Assignment of Consolidated, Amended and Restated Mortgage and Security Agreement and Spreader Agreement dated August 21, 2018 and executed, acknowledged and delivered by Original Lender to Plaintiff (the "Suffolk Assignment of Mortgage"), Plaintiff became the holder of the Suffolk Mortgage;

(b)     by virtue of an Assignment of Mortgage effective as of August 21, 2018, recorded with the City Register's Office on November 19, 2018 as CRFN 2018000383438, and executed, acknowledged and delivered by Original Lender to Plaintiff (the "Queens Assignment of Mortgage"), Plaintiff became the holder of the Queens Mortgage;

(c)     by virtue of an Assignment of Mortgage effective as of August 21, 2018, recorded with the Westchester County Clerk's Office on November 15, 2018 as Control Number 583183491, and executed, acknowledged and delivered by Original Lender to Plaintiff (the "Westchester Assignment of Mortgage"), Plaintiff became the holder of the Westchester Mortgage; and

(d)     by virtue of an Assignment of Open-End Mortgage and Security Agreement effective as of August 21, 2018, recorded in the Newtown Land Records Office on November 13, 2018 in Book 1119 at Page 423, et seq, and executed, acknowledged and delivered by Original Lender to Plaintiff (the "Connecticut Assignment of Mortgage"), Plaintiff became the holder of the Connecticut Mortgage.

28.     Original Lender also executed and delivered the following four (4) assignments of assignments of leases and rents (collectively, the "Assignments of ALRs") pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the ALRs:

(a)     by virtue of an Assignment of Assignment of Leases and Rents effective as of August 21, 2018, recorded with the Suffolk County Clerk's Office on December 19, 2019 in Liber 13041, at Page 5, et seq, and executed, acknowledged and delivered by Original Lender to Plaintiff (the "Suffolk Assignment of ALR"), Plaintiff became the holder of the Suffolk ALR;

(b)     by virtue of an Assignment of Assignment of Leases and Rents effective as of August 21, 2018, recorded with the City Register's Office on November 19, 2018 as CRFN 2018000383439, and executed, acknowledged and delivered by Original Lender to Plaintiff (the "Queens Assignment of ALR"), Plaintiff became the holder of the Queens ALR;

(c)     by virtue of an Assignment of Assignment of Leases and Rents effective as of August 21, 2018, recorded with the Westchester County Clerk's Office on November 15, 2018 as Control Number 583183492, and

16521154V.3 049954/1173067

executed, acknowledged and delivered by Original Lender to Plaintiff (the "Westchester Assignment of ALR"), Plaintiff became the holder of the Westchester ALR; and

(d)     by virtue of an Assignment of Assignment of Leases and Rents effective as of August 21, 2018, recorded in the Newtown Land Records Office on November 13, 2018 in Book 1119 at Page 427, et seq., and executed, acknowledged and delivered by Original Lender to Plaintiff (the "Connecticut Assignment of ALR"), Plaintiff became the holder of the Connecticut ALR.

29.     Original Lender also executed and delivered a General Assignment effective as of August 21, 2018 in favor of Plaintiff (the "General Assignment") pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the Loan Documents.  By virtue of the General Assignment, Plaintiff became the holder of the Loan Documents.

**C.**     **Borrower's Defaults Under the Loan Documents.**

    **i.**     **Payment Default**

30.     Pursuant to Section 2.6(a) of the Loan Agreement, Borrowers are obliged to "make a payment of interest in the amount of the Monthly Debt Service Payment Amount on the First Monthly Payment Date and on each Monthly Payment Date occurring thereafter to and including the Maturity Date."

31.     Section 10.1(a) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "any monthly Debt Service payment . . . is not paid when due, . . . and such non-payment continues for five (5) days following notice to Borrower[s] that the same is due and payable[.]"

32.     By notice dated August 14, 2019 (the "August Notice of Default"), Plaintiff, through counsel, notified Borrowers of, inter alia, Borrowers' failure to remit the Monthly Debt Service Payment Amount on the August 2019 Monthly Payment Date.

33.     Borrowers' failure to remit the Monthly Debt Service Payment Amount on the August 2019 Monthly Payment Date continued for five days after the August Notice of Default, thereby resulting in the occurrence of an Event of Default under Section 10.1(a) of the Loan Agreement.

34.     Borrowers were reminded of their Payment Default (defined below) in a notice dated October 8, 2019 (the "October 8th Notice of Default"), a notice dated October 24, 2019 (the "October 24th Notice of Default"), and a notice dated November 11, 2019 (the "November Notice of Default"), and therein demanded to cure said default, but have failed to do so.

35.     Accordingly, an Event of Default has occurred and is continuing under the Loan Documents as a result of, inter alia, Borrowers' continued failure to remit the Monthly Debt Service Payment Amount on the August 2019 Monthly Payment Date and each Full Monthly Payment due monthly thereafter (the "Payment Default").

**ii.     Cash Management Default**

36.     Pursuant to Article 9 of the Loan Agreement, Borrowers are obliged to, inter alia, (i) cause all Rents and other revenue from the Properties to be deposited into the Restricted Account; (ii) instruct Manager to deposit into the Restricted Account (A) all Rents and other revenue derived from the Properties collected by Manager, if any, pursuant to the Management Agreement (or otherwise) and (B) all funds otherwise payable to Borrower by Manager pursuant to the Management Agreement (or otherwise in connection with the Properties); (iii) deliver a Tenant Direction Notice to each Tenant; (iv) ensure that the Restricted Account is the only account into which Rents and other revenue from the Properties are deposited; and (v) establish a Cash Management Account (collectively, the "Cash Management Obligations").

16521154V.3 049954/1173067

37.     Section 10.1(q) of the Loan Agreement provides that an Event of Default shall occur if, inter alia, "any default or breach of any term, covenant or condition of the Loan Agreement not specified in subsections (a) through (p) or not otherwise specifically specified as an Event of Default in this Agreement . . . is not cured . . . [within] thirty (30) days after notice from Lender[.]"

38.     By notice dated March 27, 2019 (the "March Notice of Default"), Plaintiff, through counsel, notified Borrowers of, inter alia, Borrowers' failure to uphold the Cash Management Obligations.

39.     Borrowers' failure to uphold the Cash Management Obligations continued for thirty days after the March Notice of Default, thereby resulting in the occurrence of an Event of Default under Section 10.1(q) of the Loan Agreement.

40.     Borrowers were reminded of their failure to uphold the Cash Management Obligations in the May Notice of Default (defined below), the August Notice of Default, the October 8th Notice of Default, the October 24th Notice of Default, and the November Notice of Default, and therein demanded to cure said default, but have failed to do so.

41.     Accordingly, an Event of Default has occurred and is continuing under the Loan Documents as a result of, inter alia, Borrowers' continued failure to uphold the Cash Management Obligations for thirty days after notice (the "Cash Management Default").

### iii.     Financial Reporting Default

42.     Pursuant to Section 4.12 of the Loan Agreement, Borrowers are obliged to deliver to Lender all Required Financial Items to Lender.

43.     By notice dated May 17, 2019 (the "May Notice of Default"), Plaintiff, through counsel, notified Borrowers of, inter alia, Borrowers' failure to deliver certain Required Financial Items, i.e., (i) a proposed 2019 annual operating budget; (ii) 2018 annual balance sheet,

statement of cash flow and operating statement; (iii) operating statements of each of the Properties for the first quarter of 2019; and (iv) certified rent rolls for each of the Properties for the first quarter of 2019 (the "Delinquent Financial Items").

44.     Borrowers' failure to deliver the Delinquent Financial Items to Lender continued for thirty days after the May Notice of Default, thereby resulting in the occurrence of an Event of Default under Section 10.1(q) of the Loan Agreement.

45.     Borrowers were reminded of their failure to deliver the Delinquent Financial Items in the August Notice of Default, the October 8th Notice of Default, the October 24th Notice of Default and the November Notice of Default, and therein demanded to cure said default, but have failed to do so.

46.     Accordingly, an Event of Default has occurred and is continuing under the Loan Documents as a result of, inter alia, Borrowers' continued failure to deliver the Delinquent Financial Items for thirty days after notice (the "Financial Reporting Default").

iv.     **The Maintenance Default**

47.     Pursuant to Section 8.1(a) of the Loan Agreement, Borrowers are obliged to "perform and complete the repairs at the Propert[ies]" (collectively, the "Immediate Repairs") as set forth on and pursuant to the deadlines set forth on Schedule I of the Loan Agreement.

48.     By the August Notice of Default, Plaintiff, through counsel, notified Borrowers of, inter alia, Borrowers' failure to perform and complete the Immediate Repairs in accordance with Schedule I of the Loan Agreement.

49.     Borrowers' failure to perform and complete the Immediate Repairs continued for thirty days after the August Notice of Default, thereby resulting in the occurrence of an Event of Default under Section 10.1(q) of the Loan Agreement.

16521154V.3 049954/1173067

50.     Borrowers were reminded of their failure to failure to perform and complete the Immediate Repairs in the October 8th Notice of Default, the October 24th Notice of Default and the November Notice of Default, and therein demanded to cure said default, but have failed to do so.

51.     Accordingly, an Event of Default has occurred and is continuing under the Loan Documents as a result of, inter alia, Borrowers' continued failure to perform and complete the Immediate Repairs (the "Maintenance Default").

52.     Section 10.2 of the Loan Agreement provides, in relevant part, that:

> [u]pon the occurrence and during the continuance of an Event of Default (other than an Event of Default described in Section 10.1(f) above with respect to Borrower and SPE Component Entity only) and at any time thereafter Lender may, in addition to any other rights or remedies available to it pursuant to this Agreement, the Security Instrument, the Note and the other Loan Documents or at law or in equity, take such action, without notice or demand, that Lender deems advisable to protect and enforce its rights against Borrower and in the Property, including, without limitation, declaring the Debt to be immediately due and payable, and Lender may enforce or avail itself of any or all rights or remedies provided in this Agreement, the Security Instrument, the Note and the other Loan Documents against Borrower and the Property, including, without limitation, all rights or remedies available at law or in equity.

53.     Section 2.5(c)(i) of the Loan Agreement provides that, "[i]n the event that, and for so long as, any Event of Default shall have occurred and be continuing, (i) the then outstanding principal balance of the Loan shall accrue interest at the Default Rate . . . ." As defined in the Loan Agreement, the "Default Rate" means "a rate per annum equal to the lesser of (i) the Maximum Legal Rate, or (ii) five percent (5%) above the Interest Rate." Accordingly, the Default Rate is 9.98%.

54.     Section 2.7(c) of the Loan Agreement provides, in relevant part, that:

> After the occurrence and during the continuance of an Event of Default and notwithstanding any acceleration of the Debt in

16

accordance with all applicable terms and conditions hereof, the Default Yield Maintenance Premium shall, in all cases, be deemed a portion of the Debt due and owing hereunder and under the other Loan Documents.

55.     Section 17.7 of the Loan Agreement provides that

[i]n the event . . . Lender exercises any of its other remedies under this Agreement, the Security Instrument, the Note and the other Loan Documents, Borrower shall be chargeable with and agrees to pay all costs of collection and defense, including attorneys' fees and costs, incurred by Lender or Borrower in connection therewith and in connection with any appellate proceeding or post judgment action involved therein, together with all required service or use taxes.

56.     By letter dated February 21, 2020 (the "Notice of Acceleration"), Plaintiff, through its counsel, inter alia, notified Borrowers and Guarantor of, inter alia, the occurrence and continuance of Events of Default based upon, inter alia, the Payment Default, the Cash Management Default, the Financial Reporting Default and the Maintenance Default, and accelerated and declared the entire Indebtedness due and payable.

57.     Despite receipt of the Notice of Acceleration, Borrowers and Guarantor have failed to cure the existing Events of Default and satisfy their obligations under the Loan Documents.

58.     There is now due, owing and payable to Plaintiff under the Loan Documents: (i) $57,375,000.00 in principal; (ii) accrued and unpaid interest at the contract and default rates; (iii) late charges; (iv) attorneys' fees, costs and expenses; and (v) all other sums provided for under the Loan Documents in an amount to be determined.

59.     In order to protect the lien and security represented by the New York Mortgages during the pendency of this foreclosure action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses or charges affecting the New York Properties.  Plaintiff asks that any amount

so paid and expended by it during the pendency of this foreclosure action be added, pursuant to the Mortgage and the Loan Agreement, to its claim and be repaid to Plaintiff from the proceeds of the sale of the New York Properties, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due Plaintiff and secured by the Mortgages and the Loan Agreement.

60.     The defendants named herein are obligated to pay the mortgage indebtedness and/or have, claim to have, or may have some possessory or other interest in or lien upon the New York Properties, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the liens of the New York Mortgages.

61.     No other action or proceeding has been brought to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.     Fixing the amount due to Plaintiff pursuant to the Loan Documents;

B.     Directing that Plaintiff be paid the amounts due pursuant to the Loan Documents, with interest, advances, other charges, attorneys' fees and costs;

C.     Adjudging that the New York Properties be sold according to law to satisfy the amounts due to Plaintiff;

D.     Barring and foreclosing the defendants, and each of them, from all equity of redemption in and to the New York Properties;

E.     Directing that a receiver be appointed to take immediate possession of the Properties; and

F.     Awarding such other and further relief as the Court may deem just and proper.

18

## SECOND COUNT
### (Security Interest Foreclosure)

62.    Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 61 above, as if the same were set forth and repeated at length herein.

63.    When Borrowers executed the Mortgages, they granted valid and enforceable security interests in the Collateral located at the Properties.

64.    To further perfect its interest in the Collateral, Borrowers delivered to Original Lender the following four (4) UCC Financing Statements (collectively, the "State UCC-1s") which named the Borrowers as the debtors and Original Lender as the secured lender:

> (a)    by UCC Financing Statement filed with the Delaware Secretary of State ("DE SOS") on July 31, 2018 as File Number 20185258203, and delivered by the Suffolk Borrowers to Original Lender (the "Suffolk State UCC-1"), the Suffolk Borrowers granted to Original Lender a security interest in the Collateral located at the Suffolk Properties;

> (b)    by UCC Financing Statement filed with the DE SOS on July 31, 2018 as File Number 20185257932, and delivered by the Queens Borrowers to Original Lender (the "Queens State UCC-1"), the Queens Borrowers granted to Original Lender a security interest in the Collateral located at the Queens Properties;

> (c)    by UCC Financing Statement filed with the DE SOS on July 31, 2018 as File Number 20185257924, and delivered by Westchester Borrower to Original Lender (the "Westchester State UCC-1"), the Westchester Borrower granted to Original Lender a security interest in the Collateral located at the Westchester Property; and

> (d)    by UCC Financing Statement filed with the DE SOS on July 31, 2018 as File Number 20185258179, and delivered by Connecticut Borrower to Original Lender (the "Connecticut State UCC-1"), the Connecticut Borrower granted to Original Lender a security interest in the Collateral located at the Connecticut Property.

65.    To further perfect its interest in the Collateral, Borrowers delivered to Original Lender the following four (4) UCC Financing Statements (collectively, the "County UCC-1s") which named the Borrowers as the debtors and Original Lender as the secured lender:

(a)     by UCC Financing Statement recorded with the Suffolk County Clerk's Office on October 1, 2018 as UCC No. U20180006078, and delivered by the Suffolk Borrowers to Original Lender (the "Suffolk County UCC-1"), the Suffolk Borrowers granted to Original Lender a security interest in the Collateral located at the Suffolk Properties;

(b)     by UCC Financing Statement recorded with the City Register's Office on August 6, 2018 as CRFN 2018000261782, and delivered by the Queens Borrowers to Original Lender (the "Queens County UCC-1"), the Queens Borrowers granted to Original Lender a security interest in the Collateral located at the Queens Properties;

(c)     by UCC Financing Statement recorded with the Westchester County Clerk's Office on July 31, 2018 as Control Number 582073508 and delivered by Westchester Borrower to Original Lender (the "Westchester County UCC-1"), Westchester Borrower granted to Original Lender a security interest in the Collateral located at the Westchester Property; and

(d)     by UCC Financing Statement recorded in the Newtown Land Records Office on July 12, 2018 in Book 1114 at Page 587, et seq, and delivered by Connecticut Borrower to Original Lender (the "Connecticut County UCC-1"), Connecticut Borrower granted to Original Lender a security interest in the Collateral located at the Connecticut Property.

66.     Original Lender delivered the following four (4) UCC Assignments (collectively, the "County UCC Assignments") pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the State UCC-1s:

(a)     by UCC Financing Assignment recorded with the DE SOS on October 16, 2018 as File Number 20187158435, Original Lender assigned the Suffolk State UCC-1 to Plaintiff;

(b)     by UCC Financing Assignment recorded with the DE SOS on October 16, 2018 as File Number 20187157544, Original Lender assigned the Queens State UCC-1 to Plaintiff;

(c)     by UCC Financing Assignment recorded with the DE SOS on October 16, 2018 as File Number 20187158229, Original Lender assigned the Westchester State UCC-1 to Plaintiff; and

(d)     by UCC Financing Assignment recorded with the DE SOS on October 16, 2018 as File Number 20187158039, Original Lender assigned the Connecticut State UCC-1 to Plaintiff.

67.     Original Lender also delivered the following four (4) UCC Assignments (collectively, the "County UCC Assignments") pursuant to which Original Lender transferred to Plaintiff all rights, title and interest in and to the County UCC-1s:

(a)     by UCC Financing Assignment recorded with the Suffolk County Clerk's Office on December 6, 2019 as UCC No. U20190006641, Original Lender assigned the Suffolk County UCC-1 to Plaintiff;

(b)     by UCC Financing Assignment recorded with the City Register's Office on November 19, 2018 as CRFN 2018000383440, Original Lender assigned the Queens County UCC-1 to Plaintiff;

(c)     by UCC Financing Assignment recorded with the Westchester County Clerk's Office on November 15, 2018 as Control Number 583183515, Original Lender assigned the Westchester County UCC-1 to Plaintiff; and

(d)     by UCC Financing Assignment recorded in the Newtown Land Records Office on November 13, 2018 in Book 1119 at Page 431, et seq, Original Lender assigned the Connecticut County UCC-1 to Plaintiff.

68.     Plaintiff holds a duly perfected security interest in the Collateral by virtue of the recorded Mortgages, the filed County UCC-1s, the filed County UCC Assignments, the recorded State UCC-1s, and the recorded State UCC Assignments.

69.     Pursuant to the terms of the Loan Documents, Plaintiff elects to have the Collateral located on the New York Properties sold together with the New York Properties at a single public sale.

70.     No person or entity possesses an interest in the Collateral located at the New York Properties superior to the security interest held by Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A.     Adjudging that the Collateral located at the New York Properties be sold together with the New York Properties at a single public sale to satisfy the amounts due to Plaintiff; and

16521154V.3 049954/1173067

B.      Barring and foreclosing the defendants of all equity of redemption in and to the Collateral located at the New York Properties.

### THIRD COUNT
### (Possession)

71.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 70 above, as if the same were set forth and repeated at length herein.

72.     By reason of Borrowers' default under the terms of the Loan Documents, Plaintiff is entitled to possession of the New York Properties and the Collateral located at the New York Properties.

73.     New York Borrowers are now in possession of the New York Properties and have deprived, and continue to deprive, Plaintiff of possession of the New York Properties and the Collateral located at the New York Properties.

**WHEREFORE**, Plaintiff demands judgment against the defendants:

A.      Granting Plaintiff, its assignee or the purchaser of the New York Properties at the foreclosure sale, possession of the New York Properties and the Collateral located at the New York Properties;

B.      Awarding Plaintiff damages for mesne profits; and

C.      Granting Plaintiff its costs of suit, including reasonable attorneys' fees.

### FOURTH COUNT
### (Appointment of a Receiver)

74.     Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 73 above, as if the same were set forth and repeated at length herein.

75.     The Leases, the Rents, the books, records and other property relating to the ownership and operation of the Properties (collectively, the "Borrowers' Assets") are the sole assets of Borrowers.

16521154V.3 049954/1173067

76. Except for certain limited qualifications as set forth in the Loan Documents, Borrowers have no personal liability for repayment of the Loan, and Plaintiff's sole recourse for repayment of the Loan is the collateral securing the Loan.

77. The Loan Documents expressly allow Plaintiff to seek, and indicate Borrowers' express consent to, the appointment of a receiver upon the occurrence of an Event of Default.

78. Borrowers and their agents are still in possession of Borrowers' Assets.

79. Plaintiff, as an interested and secured party, is potentially threatened with material losses and injuries, including the Borrowers' Assets suffering continuous waste and a dissipation or diminution in value, if Borrowers remain in control of Borrowers' Assets.

80. Therefore, in accordance with Rule 66 of the Federal Rules of Civil Procedure, Plaintiff, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold, subject to the discretion of this Court, the Properties and the Borrowers' Assets.

**WHEREFORE**, Plaintiff demands judgment against the defendants as follows:

A. Appointing a receiver of the Properties and the Borrowers' Assets;

B. Directing all tenants in possession of the Properties to pay the appointed receiver all rent, income and profits;

C. Awarding Plaintiff its costs of suit and attorneys' fees; and

D. Granting such other relief as is equitable and just.

**<u>FIFTH COUNT</u>**
**(Breach of the Guaranty)**

81. Plaintiff repeats and incorporates herein the allegations contained in Paragraphs 1 through 80 above, as if the same were set forth and repeated at length herein.

23

82.     In order to induce Original Lender to make the Loan to Borrowers, Guarantors executed, acknowledged and delivered to Original Lender the Guaranty.

83.     Pursuant to the terms of the Guaranty, Guarantors irrevocably and unconditionally covenants and agrees that they are liable for the Guaranteed Obligations (as defined therein), and that Guarantors shall fully perform each and every term and provision thereof.

84.     Moreover, Guarantors agreed that, with or without notice or demand, Guarantors will reimburse Plaintiff, to the extent that such reimbursement is not made by Borrowers, for all expenses (including reasonable attorney's fees) incurred by Plaintiff in connection with the collection of the Guaranteed Obligations or any portion thereof or with the enforcement of the Guaranty.

85.     Plaintiff is the current holder of the Note, the Mortgages and the Guaranty.

86.     As a result of the Default, Guarantors are obligated to Plaintiff under the Guaranty in an amount to be determined.

87.     No other action or proceeding has been brought to recover any part of the mortgage indebtedness herein described.

**WHEREFORE**, Plaintiff demands judgment against Guarantors as follows:

A.     Fixing the amount due to Plaintiff from Guarantors pursuant to the Guaranty and any other applicable Loan Documents;

B.     Adjudging that Plaintiff is entitled to be paid by Guarantors the amounts due pursuant to the Guaranty, with interest, advances, other charges, attorneys' fees and costs; and

E.     Awarding Plaintiff its costs of suit and attorneys' fees; and

F.      Granting such other relief as is equitable and just.

Dated: New York, New York
       March 10, 2020

KILPATRICK TOWNSEND & STOCKTON LLP

By: _____
    Keith M. Brandofino, Esq.
    David V. Mignardi, Esq.
    Attorneys for Plaintiff
        *Wilmington Trust, National Association, as
        Trustee for the Benefit of the Registered
        Holders of Benchmark 2018-B5 Mortgage
        Trust, Commercial Mortgage Pass-Through
        Certificates, Series 2018-B5 acting by and
        through Midland Loan Services, a Division of
        PNC Bank, National Association*
    1114 Avenue of the Americas
    New York, New York  10036
    (212) 775-8700

16521154V.3 049954/1173067

EXHIBIT

1

# EXHIBIT A

## LEGAL DESCRIPTION

115 Montauk Highway, Westhampton Beach, New York

**ALL** that certain plot piece or parcel of land, situate, lying and being at Westhampton Beach, Town of Southampton, County of Suffolk and State of New York, bounded and described according to a survey dated April 8, 2005 made by Control Point Associates Inc. as follows:

**BEGINNING** at a point on the southerly side of Montauk Highway (State Road 27A) distant 171.86 feet easterly from the extreme northeasterly end of an arc of a curve connecting the easterly side of Oak Street with the southerly side of Montauk Highway, said point also being the northwesterly corner of land now or formerly of Richard N. Bulloss and Bruce W. Robertson;

**RUNNING THENCE** South 20 degrees 14 minutes 36 seconds West along land now or formerly of Richard Bulloss and Bruce W. Robertson, 171.88 feet to a point;

**THENCE** South 20 degrees 18 minutes 24 seconds West, 25.86 feet to a point;

**THENCE** North 71 degrees 06 minutes 36 seconds West, 167.70 feet to a point at the easterly side of Oak Street;

**THENCE** North 10 degrees 45 minutes 44 seconds East, 171.18 feet to a concrete monument found;

**THENCE** in a northeasterly direction along the arc of a curve bearing to the right having a radius of 25.00 feet, an arc length of 42.81 feet;

**THENCE** in an easterly direction along the southerly side of Montauk Highway, south 71 degrees 00 minutes 21 seconds, a distance of 171.86 feet to the point or place of **BEGINNING**.

EXHIBIT

2

191 Montauk Highway, Hampton Bays, New York

**ALL** that certain plot piece or parcel of land, situate, lying and being at Hampton Bays, Town of Southampton, County of Suffolk and State of New York, bounded and described as follows:

**BEGINNING** at the corner formed by the intersection of the easterly side of East Tiana Road with the southerly end of an arc connecting said easterly side of East Tiana Road with the southerly side of Montauk Highway;

**RUNNING THENCE** northerly and easterly along a curve to the right having a radius of 20.0 feet, distance of 37.65 feet;

**RUNNING THENCE** along the southerly side of Montauk Highway South 87 degrees 41 minutes 00 seconds East through monuments 132.55 feet to a point and lands now or formerly of Bertha Klorer;

**THENCE** along the aforesaid lands of Bertha Klorer South 14 degrees 02 minutes 40 seconds East 295.89 feet to a point and lands of Long Island Railroad;

**THENCE** South 78 degrees 44 minutes 00 seconds West 145.00 feet to a point in the easterly side of East Tiana Road;

**THENCE** along East Tiana Road North 15 degrees 32 minutes 00 seconds West 306.60 feet (per survey) 304 feet (per tax map) to the corner aforesaid, the point or place of **BEGINNING**.

**EXCEPTING** as much as was taken by the Town of Southampton by Street Dedication dated 10/22/80 recorded 11/18/80 in Liber 8916 page 26.

EXHIBIT

3

607-611 & 621 Lake Avenue, St. James, New York

## AS TO LOT 023.001 f/k/a LOT 20, 21, 22 AND 23

**ALL** that certain plot, piece or parcel of land, situate, lying and being at St. James, Town of Smithtown, County of Suffolk and State of New York, bounded and described as follows:

**BEGINNING** at a point on the southerly side of Moriches Road, which point is distant the following two (2) courses and distances from the corner formed by the intersection of the old southerly side of Moriches Road and the easterly side of Lake Avenue;

(1) Easterly as measured along the old southerly side of Moriches Road, 127.96 feet (128 feet, per tax map);
(2) South 03 degrees 00 minutes 00 seconds West, 8.70 feet (8.701 feet survey) to the true point or place of beginning; and from said point of beginning:

**RUNNING THENCE** along the new southerly side of Moriches Road, South 74 degrees 39 minutes 10 seconds East, 51.19 feet (51.18 per survey) feet to land now or formerly of Percy A. Land;

**RUNNING THENCE** along said land the following two (2) courses and distances:

1) South 03 degrees 00 minutes 00 seconds West, 184.04 feet;
2) North 87 degrees 00 minutes 00 seconds West, 50 feet;

**RUNNING THENCE** South 87 degrees 00 minutes East, a distance of 25 feet along land now or formerly of John G. Mercep, formerly of Percy A. Land;

**THENCE** North 87 degrees 00 minutes 00 seconds West, a distance of 125 feet along land now or formerly Patricia E. Mercep, formerly other lands of Percy A. Land and Meta H. Land to the easterly boundary line of Lake Avenue;

North 03 degrees 00 minutes 00 seconds East, 256.05 feet to the new southerly side of Moriches Road at the point or place of **BEGINNING**.

## AS TO LOT 024.000

**ALL** that certain plot piece or parcel of land, situate, lying and being in St. James, Town of Smithtown, County of Suffolk and State of New York, bounded and described as follows:

**BEGINNING** at a point on the easterly line of Lake Avenue, distant 25 feet northerly from the corner formed by the intersection of the northerly line of Maple Drive and the easterly line of Lake Avenue;

**RUNNING THENCE** North 03 degrees 00 minutes 00 seconds East along the easterly line of Lake Avenue, 150.00 feet to land now or formerly of Elderkin;

**THENCE** South 87 degrees 00 minutes 00 seconds West along the last mentioned land, **125** feet to the westerly line of land now or formerly of Percy Land;

**THENCE** South 03 degrees 00 minutes 00 seconds West along the last mentioned land, 150 feet to the northerly line of land now or formerly of Karl Kobel;

**THENCE** North 87 degrees 00 minutes 00 seconds West along the last mentioned land, 125 feet to the easterly side of Lake Avenue at the point or place of **BEGINNING**.

## PERIMETER LEGAL DESCRIPTION

**ALL** that certain plot piece or parcel of land, situate, lying and being in St. James, Town of Smithtown, County of Suffolk and State of New York, bounded and described as follows:

**BEGINNING** at a point being the corner formed by the intersection of the easterly side of Lake Avenue, and the southerly side of Moriches Road;

**RUNNING THENCE** South 74 degrees 39 minutes 10 seconds East, 127.96 feet;

**THENCE** South 3 degrees 00 minutes 00 seconds West, 8.701 feet;

**THENCE** South 74 degrees 39 minutes 00 seconds East, 51.18 feet;

**THENCE** South 03 degrees 00 minutes 00 seconds West, 184.04 feet;

**THENCE** North 87 degrees 00 minutes 00 seconds West, 50.00 feet;

**THENCE** South 03 degrees 00 minutes 00 seconds West, 175.00 feet;

**THENCE** North 87 degrees 00 minutes 00 seconds West, 125 feet;

**THENCE** North 3 degrees 00 minutes 00 seconds East, 406.05 feet to the point or place of **BEGINNING**.

**E**

**X**

**H**

**I**

**B**

**I**

**T**

**4**

# EXHIBIT A

## LEGAL DESCRIPTION

### 74-01 Eliot Avenue, Middle Village, New York

**ALL** that certain plot piece or parcel of land, situate, lying and being in the Borough of Queens, City and State of New York, known and designated as Lots numbered 246, 247, 248, 249, 250, 251 and 252 on a certain map entitled "Map of Property of the Estate of Ludwig Keller, deceased, "Block J" made by William L. Savacool E.E. & C.S. and filed in the Queens County Clerk's Office April 21, 1925, said lot being more fully described as follows:

**BEGINNING** at a point at the corner formed by the intersection of the northerly side of Eliot Avenue with the easterly side of 74th Street (formerly Nagy Street);

**RUNNING THENCE** northerly along the easterly side of 74th Street, 91.17 feet;

**THENCE** easterly parallel with Eliot Avenue, 100 feet;

**THENCE** northerly parallel with 74th Street, 20 feet;

**THENCE** easterly and parallel with Eliot Avenue 94.90 feet;

**THENCE** easterly along a line at interior angle of 127 degrees 16 minutes 41 seconds with the last mentioned course, 8.42 feet to the westerly side of 75th Street formerly Ward Street;

**THENCE** southerly along the westerly side of 75th Street, 12.24 feet to land of the New York Connecting Railroad;

**THENCE** southwesterly along a line at interior angle of 145 degrees 17 minutes 50 seconds with the last mentioned course and along said land of New York Connecting Railroad, 112.18 feet to the northerly side of Eliot Avenue;

**THENCE** westerly along the northerly side of Eliot Avenue, 136.13 feet to the point or place of **BEGINNING**.

**E**

**X**

**H**

**I**

**B**

**I**

**T**

**5**

<u>245-02 Merrick Blvd., Rosedale, New York</u>

**<u>LOT 50 F/K/A LOT 50 AND 60</u>**

**ALL** that certain plot piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

**BEGINNING** at a point at a point on the southerly side of Merrick Boulevard, as now laid out 100 feet wide, distant 30.89 feet westerly from the corner formed by the intersection of the southerly side of Merrick Boulevard with the westerly side of Hook Creek Boulevard;

**RUNNING THENCE** southerly at right angles to the southerly side of Merrick Boulevard, 110 feet;

**THENCE** easterly at right angles to the last mentioned course, 18.64 feet to the westerly side of Hook Creek Boulevard;

**THENCE** southerly along the westerly line of Hook Creek Boulevard along a line forming an interior angle of 78 degrees 15 minutes 43 seconds with the last mentioned course, 55.32 feet;

**THENCE** westerly along a line forming an interior angle of 100 degrees 53 minutes 18 seconds with the westerly side of Hook Creek Boulevard, 248.68 feet;

**THENCE** northerly along a line forming an interior angle of 84 degrees 55 minutes 51 seconds with the last mentioned course 161.21 feet to the southerly side of Merrick Boulevard;

**THENCE** easterly along the southerly side of Merrick Boulevard, 224.49 feet along to the point or place of **BEGINNING**.

## FOR INFORMATION ONLY

### LOT 50

ALL that certain plot piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point at a point on the southerly side of Merrick Boulevard distant 55.89 feet westerly from the corner formed by the intersection of the southerly side of Merrick Boulevard with the westerly side of Hook Creek Boulevard;

RUNNING THENCE southerly at right angles to the southerly side of Merrick Boulevard, 110 feet;

THENCE easterly at right angles to the last mentioned course, 43.64 feet to the westerly side of Hook Creek Boulevard;

THENCE southerly along the westerly line of Hook Creek Boulevard along a line forming an interior angle of 78 degrees 15 minutes 43 seconds with the last mentioned course 55.32 feet;

THENCE westerly along a line forming an interior angle of 100 degrees 53 minutes 16 seconds with the westerly side of Hook Creek Boulevard, 248.68 feet;

THENCE northerly along a line forming an interior angle of 84 degrees 55 minutes 51 seconds with the last mentioned course 161.21 feet to the southerly side of Merrick Boulevard;

THENCE easterly along the southerly side of Merrick Boulevard, 199.49 feet along to the point or place of BEGINNING.

### LOT 60

ALL that certain plot piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, bounded and described as follows:

BEGINNING at a point on the southerly side of Merrick Blvd. (100 feet wide) distant westerly 30.89 feet from the corner formed by the intersection of the southerly side of Merrick Blvd. with the present existing westerly line of Hook Creek Blvd. (Ocean Avenue);

RUNNING THENCE westerly, along the southerly side of Merrick Blvd., 25 feet;

THENCE southerly, at right angles to Merrick Blvd., 110.00 feet;

THENCE easterly, at right angles to the preceding course, 25.00 feet;

THENCE northerly at right angles to the preceding course, and part of the distance through a party wall, 110.00 feet to the southerly side of Merrick Blvd., at the point or place of BEGINNING.

102498890_3

EXHIBIT 6

<u>90-57 Sutphin Blvd., Jamaica, New York</u>

### <u>LOT 56</u>

**ALL** that certain plot piece or parcel of land, situate, lying and being in the in the Fourth Ward of the Borough of Queens, City and State of New York, bounded and described as follows:

**BEGINNING** at the corner formed by the intersection of the southerly side of Jamaica Avenue (Fulton Street) with the easterly side of Sutphin Boulevard (Sutphin Road);

**RUNNING THENCE** southerly along the easterly side of Sutphin Boulevard, 92.15 feet;

**THENCE** easterly at a right angle to Sutphin Boulevard, 60.00 feet;

**THENCE** northerly parallel with Sutphin Boulevard, 81.87 feet to the southerly side of Jamaica Avenue;

**THENCE** westerly along the southerly side of Jamaica Avenue, 60.87 feet to the point or place of **BEGINNING.**

**EXHIBIT**

**7**

## 90-59 & 90-61 Sutphin Blvd., Jamaica, New York

### LOTS 54 and 55

**ALL** that certain plot piece or parcel of land, situate, lying and being in the in the Fourth Ward of the Borough of Queens, City and State of New York, bounded and described as follows:

**BEGINNING** 92.15 feet from the corner formed by the intersection of the southerly side of Jamaica Avenue (Fulton Street) with the easterly side of Sutphin Boulevard (Sutphin Road);

**RUNNING THENCE** easterly at right angles to Sutphin Boulevard, 100.00 feet;

**THENCE** southerly parallel with Sutphin Boulevard, 36.00 feet;

**THENCE** westerly again at right angles to Sutphin Boulevard and part of the distance through a party wall, 100.00 feet;

**THENCE** northerly at right angles to the last mentioned course, 36.00 feet to the point or place of **BEGINNING**.

EXHIBIT

8

## EXHIBIT A

## LEGAL DESCRIPTION

<u>1160 West Boston Post Road, Mamaroneck, New York</u>

**ALL** that certain plot piece or parcel of land, situate, lying and being in the Town and Village of Mamaroneck, Westchester County, New York, bounded and described as follows:

**BEGINNING** at a point of intersection of the northeasterly side of Richbell Road with the northwesterly side of West Boston Post Road;

**RUNNING THENCE** along said northeasterly side of Richbell Road, North 40 degrees 26 minutes 20 seconds West 147.57 feet;

**THENCE** northwesterly on a curve to the left having a radius of 540 feet, a distance of 2.43 feet to the southeasterly line of land now or formerly of Larchmont Properties, Inc.;

**RUNNING THENCE** along the same, North 50 degrees 22 minutes 12 seconds East 201.71 feet to a point;

**RUNNING THENCE** along the other lands of Larchmont Estates, Inc. South 39 degrees 47 minutes 08 seconds East 149.45 feet to the said northwesterly side of West Boston Post Road;

**RUNNING THENCE** along the same, South 50 degrees 12 minutes 52 seconds West, 200 feet to the point or place of **BEGINNING**.

**E**

**X**

**H**

**I**

**B**

**I**

**T**

**9**

## EXHIBIT A

## LEGAL DESCRIPTION

FIRST PARCEL:

ALL THAT CERTAIN piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of Newtown, County of Fairfield, and State of Connecticut, beginning at the Southwesterly corner of land belonging now or formerly to Michael Chervansky on the Easterly line of South Main Street, known as Route #25, Newtown:

Thence running North 89° 22' East 106.0 feet along land of said Chervansky;

Thence running South 16° 30' East 84.0 feet along land now or formerly of Christine S. Savelli;

Thence running South 53° 04' West 106.0 feet along land now or formerly of Christine S. Savelli;

Thence running North 17° 30' West 54.8 feet along the Easterly line of South Main Street;

Thence running South 72° 36' West 13.0 feet along South Main Street;

Thence running North 17° 40' West 22.9 feet along the Easterly line of South Main Street;

Thence running North 72° 32' East 13.0 feet along South Main Street;

Thence running North 17° 27' West 72.3 feet along the East line of South Main Street to point or place of beginning.

Said premises being more particularly described on a certain map entitled, "Map of Property to be Conveyed to Sun Oil Company Located on South Main St. (Rte. US 25) Newtown, Conn.", made by Charles A. Cahn, Civil Engineer and Surveyor, and dated March, 1964.

SECOND PARCEL (49 South Main Street):

ALL THAT CERTAIN piece or parcel of land, together with the buildings and improvements thereon, situated in the Town of Newtown, County of Fairfield, and State of Connecticut, shown and designated as 1.172 Ac. on a certain map entitled, "Map Prepared for Max Barry, Route 25, Newtown, Connecticut, Scale 1"=40', February 13, 1976", certified substantially correct by James Osborne, Jr., R.L.S., and filed on March 31, 1976 at 11:51 a.m. in the Newtown Town Clerk's Office.

TOGETHER WITH the right to pass and repass, but not to park vehicles, over and across an eleven foot wide right of way lying seven feet Northwesterly of the Southeasterly line of the Sun Oil Company parcel, as shown on Map No. 4365 on file in the Newtown Town Clerk's Office, which right of way runs to and from Conn. Route 25 and is more particularly described in Volume 137 at Pages 376-377, Volume 137 at Pages 380-381, and in Volume 179 at Pages 415-417, all of the Newtown Land Records.

**E**

**X**

**H**

**I**

**B**

**I**

**T**

**10**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS
-----------------------------------------------X   :

FILED & RECORDED

APR 0 1 2019

COUNTY CLERK
QUEENS COUNTY

RIPCO REAL ESTATE LLC as                          :
successor to RIPCO REAL ESTATE                     :
CORP.,                                             :   **JUDGMENT AFTER**
                                                       **INQUEST**
                                                   :
                                                   :
                          Plaintiff,               :
                                                   :   Index No. 712993/2018
          -against-                                :
                                                   :
                                                   :
74-01 ELIOT AVE. LLC,                              :
                                                   :
                          Defendants.              :
-----------------------------------------------X

The summons and complaint in the above-entitled action having been served

upon the defendant 74-01 Eliot Ave., LLC, on August 28, 2018, and the Court

having, on motion of plaintiff, issued a decision and order dated December 19,

10`8, which granted plaintiff a default judgment as to liability against defendant

and directed that an inquest be held to assess damages, and the inquest of such

matter having been scheduled for March 18, 2019, and defendant after received

proper notice, failed to appear on such date, and the Hon. Denis J. Butler having

heard the oral testimony of Richard Senior, as to Plaintiff's damages, and the

1

plaintiff having appeared by its counsel, Barry R. Fertel, Esq., and in a Decision

After Inquest dated March 18, 2019, the Court having found and assessed the

plaintiff's damages at the sum of $65,000.00, with interest from June 15, 2013,

NOW, on motion of Barry R. Fertel, Esq., attorney for Ripco Real Estate

LLC, it is

ORDERED, ADJUDGED AND DECREED, that plaintiff, Ripco Real

Estate LLC, as successor to RIPCO Real Estate CORP. with an office at 32 Court Street, Brooklyn, New York 11201, have

judgment against and shall recover of defendant, 74-01 Eliot Ave., LLC, 155 East

55th Street, New York, NY 10022, the sum of $65,000.00 with interest thereon

from June 15, 2013, in the sum of $33,913.97 together with costs and disbursements

as taxed in the sum of $1,125.00, making in all the sum of $100,038.97 and the

plaintiff have execution therefor.

Judgment signed this 1st day of April, 2019.

Audrey I. Pheffer

CLERK

FILED & RECORDED

APR 0 1 2019

COUNTY CLERK
QUEENS COUNTY

ENTERED

APR 0 1 2019
12:21 PM
COUNTY CLERK
QUEENS COUNTY

2





156 - Bill of Costs (with CPLR sections) Blank Court: 1-95

Blumberg Excelsior, Publisher, NYC 10013
www.blumberg.com

SUPREME COURT STATE OF NEW YORK
COUNTY OF QUEENS

Index No. 712993/2018

RIPCO REAL ESTATE LLC as successor to RIPCO REAL ESTATE CORP.,

Plaintiff(s)

against

74-01 ELIOT AVE. LLC,

Costs of PLAINTIFF

Defendant(s)

| COSTS | $ | DISBURSEMENTS | $ |
|---|---|---|---|
| Costs before note of issue CPLR §8201 subd. 1 | 200 | Fee for index number CPLR §8018(a) | 210 |
| Costs after note of issue CPLR §8201 subd. 2 | 200 | Referee's fees CPLR §8301(a)(1), 8003(a) | |
| | | Commissioner's compensation CPLR §8301(a) (2) | |
| Trial of issue CPLR §8201 subd. 3 | 300 | Clerk's fee, filing notice of pend. or attch. CPLR §8021(a)(10) | |
| | | Entering and docketing judgment CPLR §8301(a)(7), 8016(a)(2) | |
| Allowance by statute CPLR §8302(a),(b) | | Paid for searches CPLR §8301(a)(10) | |
| | | Affidavits & acknowledgments CPLR §8009 | |
| Additional allowance CPLR §8302(d) | | Serving copy summons & complaint CPLR §8011(h)(1), 8301(d) | 90 |
| | | Request for judicial intervention | 95 |
| Motion costs CPLR §8202 | | Note of issue CPLR §8020(a) | 30 |
| | | Paid referee's report CPLR §8301(a)(12) | |
| Appeal to Appellate Term CPLR §8203(b) | | Transcripts and filing CPLR §8021 | |
| | | Certified copies of papers CPLR §8301(a)(4) | |
| Appeal to Appellate Division CPLR §8203(a) | | Satisfaction piece CPLR §5020(a), 8021 | |
| | | Certified copy of judgment CPLR §8021 | |
| Appeal to Court of Appeals CPLR §8204 | | Postage CPLR §8301(a)(12) | |
| | | Jury fee CPLR §8020(c) | |
| Costs upon frivolous claims and counterclaims CPLR §8303-a | | Stenographers' fees CPLR §8002, 8301 | |
| | | Sheriff's fees on execution CPLR §8011, 8012 | |
| | | Sheriff's fees, attachment, arrest, etc. CPLR §8011 | |
| | | Paid printing cases CPLR §8301(a)(6) | |
| | | Clerk's fees Court of Appeals CPLR §8301(a)(12) | |
| | | Paid copies of papers CPLR §8016(a)(4) | |
| | | Motion expenses CPLR §8301(b) | |
| | | Fees for publication CPLR §8301(a)(3) | |
| | | Serving subpoena CPLR §8011(h), 8301(d) | |
| | | Paid for search CPLR §8301(a)(10) | |
| | | | |
| | | Referee's Report | |
| | | Attendance of Witnesses CPLR §8001(a)(b)(e), 8301 (a)(1) | |

WITHIN COSTS TAXED with NOTICE
AT $ 1,125.00

APR 01 2019

*Audrey I. Pheffer*
COUNTY CLERK QUEENS COUNTY

| | | |
|---|---|---|
| COSTS ............... $ | 700 | |
| DISBURSEMENTS .......... | 425 ~~525~~ | |
| TOTAL ............... $ | 1,125.00 | $ ~~525~~ 425 |

State of New York, County of                             ss.:

being duly sworn, deposes, and says; that deponent is not a party to the action, is over 18 years of age and resides at

That on
deponent served the within bill of costs and notice of taxation on

attorney(s) for
herein, at his/her office at

during his/her absence from said office.
Strike out either (a) or (b).

(a) by then and there leaving a true copy of the same with

his/her clerk; partner; person having charge of said office.

(b) and said office being closed, by depositing a true copy of the same, enclosed in a sealed wrapper directed to said attorney(s), in the office letter drop or box.

Sworn to before me on

State of New York, County of                             ss.:

being duly sworn, deposes and says; that deponent is not a party to the action, is over 18 years of age and resides at

That on
deponent served the within bill of costs and notice of taxation on

attorney(s) for
at

the address designated by said attorney(s) for that purpose by depositing a true copy of same enclosed in a post paid properly addressed wrapper, in a post office--official depository under the exclusive care and custody of the United States Post Service within New York State.

Sworn to before me on

---

Index No

COURT

COUNTY OF

                                                    Plaintiff(s)

                    against

                                                    Defendant(s)

## Bill of Costs

### and Notice of                Taxation

Please Take Notice that the within is a true copy of the items of costs and disbursements in the within action

    taxed *
    and the same will be taxed *
by the clerk of
Court, at his/her office in the courthouse thereof on

at                M.
of that day--and the amount inserted in the judgment.
                            Yours, etc.

                    Attorney(s) for

To

                    Attorney(s) for

Service of the within bill of costs and notice of taxation is hereby admitted on

                    Attorney(s) for

* Check one (CPLR § 8402, 8403).

---

ATTORNEY'S AFFIRMATION

STATE OF NEW YORK, COUNTY OF WESTCHESTER
                                    ss.:

The undersigned, an attorney admitted to practice in the courts of this state, affirms: that I am

the attorney(s) of record for the
Plaintiff
in the above entitled action; that the foregoing disbursements have been or will be necessarily be made or incurred in this action and are reasonable in amount and that each of the persons named as witnesses attended as such witness on the trial, hearing or examination before trial herein the number of days set opposite their names; that each of said persons resided the number of miles set opposite their names, from the place of said trial, hearing or examination; and each of said persons, as such witness as aforesaid, necessarily traveled the number of miles to set opposite their names in traveling to, and the same distance in returning from, the same place of trial, hearing or examination; and that copies of documents or papers as charged herein were actually and necessarily obtained for use.

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.

Dated: March 27, 2019

Barry R. Fertel

EXHIBIT

11

www.areaabstractors.com (support@areaabstractors.com)

**13209**

| NAME | Type | Start | End | County | Hits | Run Date |
|------|------|-------|-----|--------|------|----------|
| 245-02 | ECB | 1/1/2009 | 12/31/2019 | ALL COUNTIES | 3 | 2/6/2020 |

| | | |
|---|---|---|
| 245-02 Owner Llc | **ECB Viol No.** 208744663 | **JUDGMENT DATE:** 10/18/19 |
| 245-02  MERRICK BOULEVARD | **DECISION DATE:** 09/03/19 | Original Amount: $300.00 Interest: $2.74 Total Due: $302.74 Good to 2/6/2020 |
| ROSEDALE  NY  11422 | **ECB BOOK DATE:** 12/31/19 | |

| | | |
|---|---|---|
| 245-02 Owner Llc | **ECB Viol No.** 208742088 | **JUDGMENT DATE:** 12/12/19 |
| 245-02  MERRICK BOULEVARD | **DECISION DATE:** 10/28/19 | Original Amount: $300.00 Interest: $.44 Total Due: $300.44 Good to 2/6/2020 |
| ROSEDALE  NY  11422 | **ECB BOOK DATE:** 01/31/20 | |

| | | |
|---|---|---|
| 245-02 Owner Llc | **ECB Viol No.** 208747972 | **JUDGMENT DATE:** 11/21/19 |
| 245-02  MERRICK BOULEVARD | **DECISION DATE:** 10/07/19 | Original Amount: $300.00 Interest: $.44 Total Due: $300.44 Good to 2/6/2020 |
| ROSEDALE  NY  11422 | **ECB BOOK DATE:** 01/31/20 | |

www.areaabstractors.com (support@areaabstractors.com)

9994

| NAME | Type | Start | End | County | Hits | Run Date |
|------|------|-------|-----|--------|------|----------|
| 90-57, | ECB | 1/1/2009 | 12/31/2019 | ALL COUNTIES | 18 | 2/6/2020 |

---

90-57 Sutph Realty Llc.

90-53  SUTPHIN BLVD

  11466

**ECB Viol No. 11466652R**

**DECISION DATE:** 04/04/16

**ECB BOOK DATE:** 07/31/16

**JUDGMENT DATE:** 05/19/16
Original Amount: $1,000.00 Interest: $316.85
Total Due: $1,316.85 Good to 2/6/2020

---

90-57 Sutphin Realty

90-53  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No. 11702632L**

**DECISION DATE:** 08/26/19

**ECB BOOK DATE:** 11/30/19

**JUDGMENT DATE:**
Original Amount: $5,000.00 Interest: $83.84
Total Due: $5,083.84 Good to 2/6/2020

---

90-57 Sutphin Realty Llc

90-57  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No. 11442097K**

**DECISION DATE:** 10/19/15

**ECB BOOK DATE:** 01/31/16

**JUDGMENT DATE:** 12/04/15
Original Amount: $600.00 Interest: $217.04
Total Due: $817.04 Good to 2/6/2020

---

90-57 Sutphin Realty Llc

90-57  JAMAICA AVENUE

JAMAICA  NY  11421

**ECB Viol No. 32076976L**

**DECISION DATE:** 07/19/16

**ECB BOOK DATE:** 10/31/16

**JUDGMENT DATE:** 09/02/16
Original Amount: $2,500.00 Interest: $735.41
Total Due: $3,235.41 Good to 2/6/2020

---

90-57 Sutphin Realty Llc.

90-53  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No. 11466651P**

**DECISION DATE:** 04/04/16

**ECB BOOK DATE:** 07/31/16

**JUDGMENT DATE:** 05/19/16
Original Amount: $5,000.00 Interest: $1,584.25
Total Due: $6,584.25 Good to 2/6/2020

---

90-57 Sutphin Realty Llc.

90-53  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No. 11493573M**

**DECISION DATE:** 08/01/16

**ECB BOOK DATE:** 10/31/16

**JUDGMENT DATE:** 09/15/16
Original Amount: $1,000.00 Interest: $294.16
Total Due: $1,294.16 Good to 2/6/2020

---

90-57 Sutphin Realty Llc.

90-53  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No. 11493556K**

**DECISION DATE:** 08/01/16

**ECB BOOK DATE:** 10/31/16

**JUDGMENT DATE:** 09/15/16
Original Amount: $5,000.00 Interest: $1,470.82
Total Due: $6,470.82 Good to 2/6/2020

---

9057 Sutphin Realty, Llc

90-53  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No. 11591188P**

**DECISION DATE:** 04/17/17

**ECB BOOK DATE:** 07/31/17

**JUDGMENT DATE:**
Original Amount: $1,000.00 Interest: $226.85
Total Due: $1,226.85 Good to 2/6/2020

---

90-57 Sutphin Realty, Llc

90-53  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No. 11591189R**

**DECISION DATE:** 04/17/17

**ECB BOOK DATE:** 07/31/17

**JUDGMENT DATE:**
Original Amount: $5,000.00 Interest: $1,134.25
Total Due: $6,134.25 Good to 2/6/2020

| 90-57 Sutphin Realty, Llc | **ECB Viol No.** 11623698Z | **JUDGMENT DATE:** |
|---|---|---|
| 90-53  SUTPHIN BOULEVARD | **DECISION DATE:** 11/22/17 | Original Amount: $5,000.00 Interest: $834.66 |
| JAMAICA  NY  11435 | **ECB BOOK DATE:** 03/31/18 | Total Due: $5,834.66 Good to 2/6/2020 |

| 90-57 Sutphin Realty, Llc | **ECB Viol No.** 11623699K | **JUDGMENT DATE:** |
|---|---|---|
| 90-53  SUTPHIN BOULEVARD | **DECISION DATE:** 11/20/17 | Original Amount: $1,000.00 Interest: $166.93 |
| JAMAICA  NY  11435 | **ECB BOOK DATE:** 03/31/18 | Total Due: $1,166.93 Good to 2/6/2020 |

| 90-57 Sutphin Realty, Llc | **ECB Viol No.** 11618429Y | **JUDGMENT DATE:** |
|---|---|---|
|  P.O.BOX 20315 | **DECISION DATE:** 07/16/18 | Original Amount: $5,000.00 Interest: $570.82 |
| MANHATTAN  NY  10021 | **ECB BOOK DATE:** 10/31/18 | Total Due: $5,570.82 Good to 2/6/2020 |

| 90-57 Sutphin Realty, Llc | **ECB Viol No.** 11618430L | **JUDGMENT DATE:** |
|---|---|---|
| 90-53  SUTPHIN BOULEVARD | **DECISION DATE:** 07/16/18 | Original Amount: $1,000.00 Interest: $114.16 |
| JAMAICA  NY  11435 | **ECB BOOK DATE:** 10/31/18 | Total Due: $1,114.16 Good to 2/6/2020 |

| 90-57 Sutphin Realty, Llc | **ECB Viol No.** 11661474R | **JUDGMENT DATE:** |
|---|---|---|
| 90-53  SUTPHIN BOULEVARD | **DECISION DATE:** 04/15/19 | Original Amount: $1,000.00 Interest: $46.85 |
| JAMAICA  NY  11435 | **ECB BOOK DATE:** 07/31/19 | Total Due: $1,046.85 Good to 2/6/2020 |

| 90-57 Sutphin Realty, Llc | **ECB Viol No.** 11661477M | **JUDGMENT DATE:** |
|---|---|---|
| 90-53  SUTPHIN BOULEVARD | **DECISION DATE:** 04/15/19 | Original Amount: $5,000.00 Interest: $234.25 |
| JAMAICA  NY  11435 | **ECB BOOK DATE:** 07/31/19 | Total Due: $5,234.25 Good to 2/6/2020 |

| 90-57 Sutphin Realty, Llc | **ECB Viol No.** 11702617N | **JUDGMENT DATE:** |
|---|---|---|
| 90-53  SUTPHIN BOULEVARD | **DECISION DATE:** 08/26/19 | Original Amount: $1,000.00 Interest: $16.77 |
| JAMAICA  NY  11435 | **ECB BOOK DATE:** 11/30/19 | Total Due: $1,016.77 Good to 2/6/2020 |

| 90-57 Sutphin Realty, Llc | **ECB Viol No.** 11702616L | **JUDGMENT DATE:** |
|---|---|---|
| 90-53  SUTPHIN BOULEVARD | **DECISION DATE:** 08/26/19 | Original Amount: $1,000.00 Interest: $16.77 |
| JAMAICA  NY  11435 | **ECB BOOK DATE:** 11/30/19 | Total Due: $1,016.77 Good to 2/6/2020 |

| 90-57 Sutphin, Llc | **ECB Viol No.** 11499825R | **JUDGMENT DATE:** 12/08/16 |
|---|---|---|
| 90-53  SUTPHIN BOULEVARD | **DECISION DATE:** 10/24/16 | Original Amount: $5,000.00 Interest: $1,357.40 |
| JAMAICA  NY  11435 | **ECB BOOK DATE:** 01/31/17 | Total Due: $6,357.40 Good to 2/6/2020 |

9994

www.areaabstractors.com (support@areaabstractors.com)

| ADDRESS | Type | Start | End | County | Hts | Run Date |
|---|---|---|---|---|---|---|
| 90-57 SUTPHIN | ECB | 1/1/1999 | 12/31/2019 | ALL COUNTIES | 1 | 2/6/2020 |

90-57 Sutphin Realty Llc

90-57  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No.** 11442097K

**DECISION DATE:** 10/19/15

**ECB BOOK DATE:** 01/31/16

**JUDGMENT DATE:** 12/04/15

Original Amount: $600.00 Interest: $217.04
Total Due: $817.04 Good to 2/6/2020

Page 1 of 1

**9994**

| NAME | Type | Start | End | County | Hts | Run Date |
|------|------|-------|-----|--------|-----|----------|
| 9059, | ECB | 1/1/2009 | 12/31/2019 | ALL COUNTIES | 4 | 2/7/2020 |

---

90-59 Sutphin Realty Llc

90-59  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No.** 11691893Z

**DECISION DATE:** 08/12/19

**ECB BOOK DATE:** 11/30/19

**JUDGMENT DATE:**
Original Amount: $1,000.00 Interest: $17.01
Total Due: $1,017.01 Good to 2/7/2020

---

90-59 Sutphin Realty, Co

9059  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No.** 11662476P

**DECISION DATE:** 04/15/19

**ECB BOOK DATE:** 07/31/19

**JUDGMENT DATE:**
Original Amount: $1,000.00 Interest: $47.10
Total Due: $1,047.10 Good to 2/7/2020

---

90-59 Sutphin Realty, Llc

90-59  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No.** 11618709Z

**DECISION DATE:** 08/06/18

**ECB BOOK DATE:** 11/30/18

**JUDGMENT DATE:**
Original Amount: $1,000.00 Interest: $107.01
Total Due: $1,107.01 Good to 2/7/2020

---

90-59 Sutphin Realty, Llc

90-59  SUTPHIN BOULEVARD

JAMAICA  NY  11435

**ECB Viol No.** 11691884R

**DECISION DATE:** 08/12/19

**ECB BOOK DATE:** 11/30/19

**JUDGMENT DATE:**
Original Amount: $5,000.00 Interest: $85.07
Total Due: $5,085.07 Good to 2/7/2020

Page 1 of 1