UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                          :

WILMINGTON TRUST, NATIONAL ASSOCIATION,  :
AS TRUSTEE FOR THE BENEFIT OF THE            :
REGISTERED HOLDERS OF BENCHMARK 2018-B5 :
MORTGAGE TRUST, COMMERCIAL MORTGAGE    :          20-CV-2157 (JMF)
PASS-THROUGH CERTIFICATES, SERIES 2018-B5,   :
*acting by and through Midland Loan Services, a Division* :     MEMORANDUM OPINION
*of PNC Bank, National Association, as Special Servicer*  :         AND ORDER
*under the Pooling and Servicing Agreement dated as of*  :
*August 1, 2018*,                                              :

                          Plaintiff,                                          :

    -v-                                                                    :

115 OWNER LLC et al.,                                    :

                        Defendants.                                  :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       In this case, Plaintiff Wilmington Trust, N.A. ("Wilmington"), the Trustee of a commercial mortgage-backed securities ("CMBS") trust, seeks to foreclose on certain properties securing loans and mortgages comprising the Trust. Defendants, the allegedly defaulting borrowers (and their guarantors), move, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, to dismiss for lack of subject-matter jurisdiction, arguing that Wilmington is not a "real and substantial party to the controversy" whose citizenship should be considered for purposes of the diversity analysis. ECF No. 63 ("Defs.' Mem."), at 9. The real and substantial party or parties to the controversy, they argue, would defeat complete diversity. *See id.* at 13.

       The Court is not persuaded. "[A] trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro Savings Ass'n v. Lee*, 446 U.S. 458, 464 (1980).

Here, it is clear from the Pooling Services Agreement ("PSA") governing the Trust that Wilmington possesses the power to "hold, manage, and dispose of" the Trust assets. Wilmington, as Trustee, holds "in trust without recourse, for the benefit of the Certificateholders . . . all the right, title and interest . . . in, to and under . . . the Mortgage Loans." ECF No. 64-2 ("PSA"), § 2.01(a). The special servicer, Midland Loan Services ("Midland"), and the master servicer are charged with various duties to manage the Trust, PSA §§ 3.02-06, but, significantly, their power, including the power to initiate litigation, flows *from the Trustee*: "[T]he Master Servicer and the Special Servicer . . . [are] hereby authorized and empowered *by the Trustee* to execute and deliver . . . complaints or other pleadings to initiate and/or to terminate any action, suit or proceeding on behalf of the Trust." *Id.* § 3.01(b) (emphasis added). Moreover, if they are terminated, "all authority and power of the [Special Servicer or Master Servicer] shall pass to and be vested in the Trustee." *Id.* § 7.01(b). Thus, the Court concludes that Wilmington is not "act[ing] as [a] mere conduit for a remedy flowing to others." *Navarro Sav. Ass'n*, 446 U.S. at 465 (internal quotation marks omitted). It has "legal title," "manage[s] the assets," and "control[s] the litigation" and, thus, is a "real part[y] to the controversy." *Id.*; *see, e.g.*, *Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC*, No. 16-CV-9112 (LGS), 2017 WL 2684069, at *2-4 (S.D.N.Y. June 21, 2017) (holding, in a similar case, that the trustee, and not the special servicer or the certificateholders of a CMBS trust, was a real and substantial party to a proceeding alleging default on loans held by the trust).

Defendants' arguments to the contrary are unpersuasive. They contend first that Wilmington lacks control over the litigation because the Complaint is brought "by and through" Midland. *See* Defs.' Mem. 13-14. The PSA, they note, *id.* at 14, provides that "[t]he Special Servicer shall . . . exercise reasonable efforts . . . to, at any time, institute foreclosure

2

proceedings," PSA § 3.09(a). But the fact that "this action is brought 'by and through'" Midland and that Midland has the power to initiate foreclosure proceedings "does not undermine the conclusion that the Trustee is a real and substantial party." *390 Park Ave. Assocs., LLC*, 2017 WL 2684069, at *3.[1] As noted, Midland's power to initiate proceedings under the PSA is a delegation of authority from Wilmington and does not affect Wilmington's status as Trustee. *See* PSA § 3.01(b); *see also Wells Fargo Bank, N.A., Tr. v. Konover*, No. 05-CV-1924 (CFD), 2009 WL 2710229, at *4 (D. Conn. Aug. 21, 2009) ("[D]elegation to a servicer is not relevant because, in so delegating, the Trustee does not relinquish the powers it holds as Trustee."). Moreover, Midland is not itself a real and substantial party because it does not hold any assets for the Trust and has no stake in the underlying controversy. *See 390 Park Ave. Assocs., LLC*, 2017 WL 2684069, at *3; *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 859 F. Supp. 2d 602, 609 (S.D.N.Y. 2012) (holding that the special servicer did not "have its own stake in the litigation apart from its duties under the PSA to represent the Trustee, the real party in interest, in certain actions affecting the Trustee's interests" (internal quotation marks omitted)).

Defendants point as well to the fact that, under the PSA, "the Directing Certificateholder shall be entitled to advise . . . the Special Servicer with respect to all Major Decisions," including

---

[1] In a strange aside, Defendants also argue that then-New York Governor Andrew Cuomo's Executive Order limiting foreclosure proceedings due to the COVID-19 pandemic is *itself* evidence that this Court lacks jurisdiction and that that fact distinguishes this case from *390 Park Ave. Assocs.*, 2017 WL 2684069. Defs.' Mem. 15-16 & n.8. Not so. Setting aside the question of whether this case could have originally been brought in state court, the mere fact that Wilmington may have had a reason to avoid state court is not evidence that this Court lacks jurisdiction. And although Defendants suggest that this action is barred by the Governor's Executive Order, Defs.' Mem. 4 n.2; ECF No. 66 ("Defs.' Reply"), at 8 n.5, they fail to develop the argument. Accordingly, the Court need not and does not address it at this stage. *See Fieldcamp v. City of New York*, 242 F. Supp. 2d 388, 391 (S.D.N.Y. 2003) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue.").

3

"any proposed or actual foreclosure." PSA § 6.08(a); *see* Defs.' Mem. 14. But the mere fact that the Directing Certificateholder is entitled to advise Midland as to foreclosures under the PSA does not indicate that *Wilmington* is not a real and substantial party to the controversy. The Directing Certificateholder cannot participate in the management of the Trust, *see* PSA § 13.03(b), and, unlike Wilmington, would have no authority to sue on behalf of the Trust in its own name, *see* Pl.'s Mem. 14 (citing PSA § 13.03(c)); *see also, e.g.*, *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017) (holding that a traditional trust "can only sue or be sued in the name of its trustee"). That would be true even if, as Defendants contend, *see* Defs.' Reply 5-6, the Directing Certificateholder requested that Wilmington initiate a foreclosure proceeding, *see, e.g.*, *390 Park Ave. Assocs., LLC*, 2017 WL 2684069, at *3 ("[Even though] the Directing Certificateholder must give consent before a foreclosure action is initiated[,] the Trustee nonetheless has the power to bring suit in its name on behalf of the trust.").

Nor does either the Notice of Intent to Foreclose or the prospectus suggest that Wilmington is not a real and substantial party to this litigation. The former, which was sent by Midland and identifies the Trust, rather than Wilmington, as the lender, *see* Defs.' Mem. 15; ECF No. 62-1, at 1, obviously cannot amend the PSA. And in any event, Defendants contend that the Notice is "void *ab initio*." Defs.' Mem. 15 n.7. Meanwhile, although the prospectus identifies an entity named Prime Finance as having a financial interest in the Trust through the Directing Certificateholder, Prime Finance cannot sue on behalf of the Trust. Pl.'s Mem. 14; *contra* Defs.' Reply 2-3. And a mere financial interest in the lawsuit is not determinative: "[W]here multiple parties all have a financial interest in a lawsuit, a strategic choice of parties in order to maintain diversity is not considered to be collusive so long as the party chosen to bring

4

the suit is in fact the master of the litigation." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 195 (2d Cir. 2003) (emphases omitted) (citing *Transcontinental Oil Corp. v. Trenton Prods. Co.*, 560 F.2d 94, 103 (2d Cir. 1977)); *see also id.* at 194 (holding that the plaintiff's 11.53% interest in suit was sufficient to establish it as a real and substantial party to the dispute). Here, because Wilmington is the only party empowered to sue on behalf of the Trust, it, not Midland and not Prime Finance, is clearly the "master of the litigation."

Finally, citing *Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378 (2016), Defendants half-heartedly suggest that the Court should consider the citizenship of the "members" of the Trust, rather than its Trustee, to determine citizenship. Defs.' Mem. 11; *see also* Defs.' Reply 4. The suggestion is without merit. In *Americold Realty Trust*, the Supreme Court distinguished between "a traditional trust," in which the trustee's "citizenship is all that matters for diversity purposes," and "a variety of unincorporated entities" to which states "have applied the 'trust' label," but which are able to sue in their own names. 577 U.S. at 383. Such an unincorporated entity, like the real estate investment trust created under Maryland law at issue in *Americold*, "possesses the citizenship of all its members" despite its "trust" label. *Id.* Here, however, Wilmington contends that the Trust is a "traditional trust," not an unincorporated association. Pl.'s Mem. 3, 10. Defendants identify no evidence to the contrary. The PSA does not, for example, state that the Trust is a "creature of" state law bearing the "trust" name even though it is, in fact, an unincorporated association. Moreover, numerous courts in this district have treated similar trusts as "traditional common law trusts," the trustees of which are the entities that matter for purposes of diversity jurisdiction. *See 390 Park Ave. Assocs., LLC*, 2017 WL 2684069, at *3; *U.S. Bank, Nat'l Ass'n v. UBS Real Est. Sec. Inc.*, 205 F. Supp. 3d 386, 411

(S.D.N.Y. 2016); *Wilmington Tr., N.A. v. 1141 Realty Owner, LLC*, No. 17-CV-7081 (LGS), 2018 WL 1384510, at *2 (S.D.N.Y. Mar. 16, 2018).

The Court has considered Defendants' remaining arguments and finds that they are without merit. Accordingly, and for the foregoing reasons, their motion to dismiss is DENIED. Additionally, because Wilmington adequately alleges diversity jurisdiction at this stage of the litigation, Defendants' motion for jurisdictional discovery is also DENIED. Unless and until the Court orders otherwise, Defendants shall file their answer to the Complaint within two weeks of the date of this Memorandum Opinion and Order. By separate Order to be entered today, the Court will schedule an initial pretrial conference.

The Clerk of Court is directed to terminate ECF No. 61.

SO ORDERED.

Dated: November 2, 2021
       New York, New York

JESSE M. FURMAN
United States District Judge